CENTRAL TRUST AND SAVINGS COMPANY, Appellant, *v.* WATERBURY COMPANY, Respondent.

First Department, December 15, 1922.

**Principal and agent** — action to recover on note for money loaned — defense of payment — money loaned by plaintiff to defendant through loan broker — accounts receivable assigned to loan broker and by him assigned to plaintiff — defendant gave its note to loan broker who assigned it to plaintiff — defendant paid loan broker amount of loan but he failed to pay plaintiff — loan broker was defendant's agent.

A loan broker is the agent of a borrower and the borrower is liable to the lender on a promissory note, given by the borrower to the loan broker and assigned as collateral to the lender, where it appears that the loan broker entered into an agreement with the borrower to secure loans for him; that the borrower assigned accounts receivable to the loan broker and they were by him reassigned to the lender; that the agreement provided that the borrower would transmit moneys received on accounts receivable to the loan broker and that he would pay the same to the lender to whom the accounts had been assigned; that the loan broker, in carrying out the agreement, secured loans from several people and assigned to them accounts receivable; that the borrower did not know to which lender any particular account was assigned, and that the borrower transmitted to the loan broker moneys in payment of its note which the loan broker failed to pay over to the lender.

FINCH and MERRELL, JJ., dissent, with opinion.

APPEAL by the plaintiff, Central Trust and Savings Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 27th day of July, 1918, upon the report of a referee appointed to hear and determine, dismissing the complaint.

*Alexander & Green* [*Clifton P. Williamson* of counsel; *Edward W. Bourne* with him on the brief], for the appellant.

*Marsh & Wever* [*Charles Capron Marsh* of counsel], for the respondent.

SMITH, J.:

The plaintiff loaned to the defendant certain moneys, part of which only have been repaid. This loan was made through one Dockendorff without personal negotiation with the defendant, and Dockendorff was paid the full amount of the loan. The sole question here for determination is whether Dockendorff was the agent of the plaintiff to receive those moneys. If so, the plaintiff has been paid in full and the judgment is right.

This determination rests upon many facts somewhat complicated. The defendant was a mercantile corporation. In its business it needed to borrow large amounts of money. One Dockendorff undertook to borrow this money on its behalf through a system which he had inaugurated and under which he was working with various other mercantile corporations desiring to borrow money for the purposes of their transactions. In 1914 Dockendorff went into bankruptcy. This system of Dockendorff's was an elaborate system by which contracts were made between the mercantile company and Dockendorff, under which Dockendorff did procure credit or loans from various financial institutions under agreement made between him and those institutions, so that under the contract in the case at bar it is contended by the plaintiff that Dockendorff was merely a loan broker, and that the defendant was at all times liable to the plaintiff for the repayment of moneys loaned to the defendant, and that the payment of those moneys by the defendant to Dockendorff, where consented to by the plaintiff, did not constitute Dockendorff the agent of the plaintiff to receive such payment as its agent.

On December 9, 1907, the agreement between the defendant and Dockendorff was signed. In this instrument the defendant is referred to as the party of the first part, and Dockendorff the party of the second part. It provides that the defendant shall assign and deliver to Dockendorff all accounts receivable for sales of merchandise with certain exceptions, and further provides that Dockendorff shall use his best efforts to procure loans

for the defendant on the security of the said accounts. Dockendorff undertook to use his best efforts to procure loans and advances for the defendant on its accounts receivable from financial institutions or persons to whom he should reassign said accounts receivable. It was therein provided that the proceeds of the loans procured by Dockendorff shall, while in his possession, be held by him in trust, *first* to be applied to the payment of interest on such loans, and *second*, to the payment of any accounts receivable rejected by the lender, after having been assigned to such lender as collateral security, and *third*, to the payment of any money which may become due any lender under the terms of this agreement. The defendant was to execute a promissory note which was to contain such conditions and agreements as the lender might require, and the lender might require further papers. Dockendorff was to be paid a commission on his account. Thereafter Dockendorff entered into a contract with the plaintiff and delivered to the plaintiff the $50,000 note of the defendant. The note contained a direct promise to pay to the plaintiff and recited: " This note is given in pursuance of a certain agreement made between Waterbury Company and John E. Dockendorff, dated December 9, 1907, certified copy of which is furnished Central Trust & Savings Company, and with an agreement between the said John E. Dockendorff and Central Trust & Savings Company dated April —, 1908, and is to be interpreted in harmony with said agreements."

The agreement between Dockendorff and the plaintiff was made on the 20th day of April, 1908. That agreement in part recited: " Central Trust & Savings Company agrees to make loans and advances to said Waterbury Company from time to time until further notice, taking as security therefor the promissory note of said company payable on demand, to be secured by approved accounts receivable of said company assigned to it by said John E. Dockendorff as contemplated in the agreement above recited."

By paragraph 4 it is recited that Dockendorff will give to the Central Trust and Savings Company any information or knowledge which he may receive affecting the solvency or the credit of said Waterbury Company, or relating to the financial status of, or to any suit or proceeding against, any of the debtors under the accounts receivable assigned to said company. The note of April 16, 1908, for $50,000 was on April 2, 1909, returned to Dockendorff by the bank after the receipt of another note for $75,000 executed by the defendant. This second note was executed to Dockendorff himself and was by him assigned to the plaintiff. The referee has found that the defendant had no notice of the assignment to the plaintiff. This seems to me immaterial, because the note was

clearly executed to be assigned to some person who should advance money, and any party which advanced moneys and received the note was entitled to all the benefits therefrom. Moreover, from the transactions thereafter had between the plaintiff, Dockendorff and the defendant, it appears to me demonstrable that the defendant had full knowledge that the plaintiff held this note. By the contract between the defendant and Dockendorff, which is referred to and made a part of the contract between Dockendorff and the plaintiff, it was provided that any moneys, notes or other securities which should be received by the defendant from its customers should be transferred to Dockendorff. On September 1, 1911, defendant and Dockendorff entered into a new agreement. This new agreement was in most respects similar to the prior agreement and did not change the actual methods of doing business. It may be presumed from its reading that the phraseology of the agreement of 1907 was changed for the purpose of giving Dockendorff a standing as a creditor in case of the possible bankruptcy of the borrower. The form of the new agreement was substantially identical with that of the agreement in the case of *Presser* v. *Central Trust & Savings Co.* (189 App. Div. 721; affd., 232 N. Y. 573). There is no evidence and no finding that the plaintiff had notice of the cancellation of the agreement of 1907 and the execution of the agreement of 1911.

The transactions under the Dockendorff arrangement between the plaintiff and the defendant through Dockendorff began after April 16, 1908. The method of procedure was substantially as follows: The Waterbury Company would send to Dockendorff so-called certificates of indebtedness, which were in fact assignments of invoices, and upon the reverse side of the certificates were certain representations, and among them, that the moneys received upon the said invoices by the defendant should be immediately transferred to Dockendorff. These invoices were according to the agreement transferred by Dockendorff to the plaintiff. The certificates contained this provision: " The undersigned, knowing that this account is to be reassigned by John E. Dockendorff to a financial institution or person and is to be given to said financial institution or person as collateral security for a loan to be made to the undersigned, for the express purpose of inducing said institution or person to which it may be assigned by John E. Dockendorff to part with its money and to make the said loan to the undersigned, does hereby make the following representations to both John E. Dockendorff and the said financial institution or person."

In the agreement between Dockendorff and the plaintiff, Dockendorff agrees that he will make payments from the account in the

Central Trust and Savings Company to be designated: " J. E. Dockendorff No. 4 Account," only for the purposes stated in said paragraph, and further, that he will indorse direct to the Central Trust and Savings Company and deliver to it all checks and notes received by him, and will also pay to it all moneys received by him in payment or on account of the accounts receivable which have been assigned to the Central Trust and Savings Company, provided that a check or note received in payment or on account of two or more accounts receivable, not all of which have been assigned to the Central Trust and Savings Company, shall be collected by him, and he shall pay over the proceeds thereof to the Central Trust and Savings Company and other holders of such accounts in the proportions in which they are severally entitled to share. It is further provided that he will give to the plaintiff any information in respect of the solvency or credit of the defendant, and will at all times keep the plaintiff advised with reference to everything which may in any way affect the business therein contemplated to be transacted, and, further, " That he will apply to the payment of any account receivable rejected by Central Trust and Savings Company after having been assigned to it and to the payment of any other indebtedness arising under the agreement hereinabove recited, the proceeds of any loans procured by him on any accounts receivable and any other moneys received by him from said accounts receivable which do not belong to another institution or person having made loans to said company."

And by paragraph 3 it was provided: " That said Dockendorff will deposit or cause to be deposited with Central Trust and Savings Company upon interest bearing certificates of deposit, or otherwise, as may be agreed upon, an amount of money which shall at all times during the continuance of this agreement equal at least thirty per cent of the aggregate amount of outstanding loans to Waterbury Company."

Acting under these various agreements Dockendorff borrowed large sums of money from the plaintiff and assigned to the plaintiff part of the invoices which had been assigned to him by the defendant. The moneys received by Dockendorff from the plaintiff were all of them delivered to the defendant. The moneys received by Dockendorff from the defendant, however, in payment of these invoices were not all transmitted to the plaintiff as had been agreed, but a part thereof has been retained; and for the balance due of the moneys loaned over and above the amount received by the plaintiff from Dockendorff, this action has been brought.

It is apparent, in the first place, that the customers of the defendant were not to know of these transactions through Docken-

dorff with the bank.   For that reason they made payments direct to the defendant as their invoices became due.   In the second place, these moneys were all handed over to Dockendorff for the evident reason that Dockendorff was loaning money from eleven different institutions for the defendant.   The defendant had no knowledge as to what institution held any particular invoice which had been paid, and necessarily, therefore, the moneys and securities were required to be delivered to Dockendorff for him to make distribution thereof, depending upon whatever bank should hold the invoice which had been thus paid.

I am unable to agree with the learned referee in his holding that Dockendorff was the agent of the plaintiff to receive these moneys. This system of Dockendorff's was one carefully worked out for the aid, not of the bank from whom the moneys would be loaned, but of the mercantile houses which needed to borrow money upon the security of their accounts.   Dockendorff was merely a loan broker who raised this money for these mercantile houses, which, in the case at bar, gave its own promissory note under a system which was undoubtedly fully known to all parties.   It would be a most unusual transaction for the bank to make the broker who came to it from these mercantile houses its own agent to receive those moneys.   It was a convenient way for the mercantile houses to make the loan and pay the same, without publicity, to their customers.   It was part of the original scheme, which was being effected in behalf of the borrowers, and which necessitated the payment of these moneys to Dockendorff, that he might distribute to the institutions which, according to his knowledge alone, held the particular securities or invoices which had thus been paid.   A different question might arise if the plaintiff were the sole lender in this scheme, and the inference might then well be that the acquiescence in the receipt of the moneys by Dockendorff constituted Dockendorff its agent to receive the same.   But that inference is entirely overcome when it appears that Dockendorff was acting in defendant's behalf through eleven different lenders to whom he assigned such invoices as he should elect, and the defendant at no time knew to what financial institution these particular moneys were payable.   It is claimed that Dockendorff agreed to protect the bank.   This, in itself, has little significance. Dockendorff himself gave his promissory note to the bank for thirty per cent of the loans, and received the money by which these securities of deposit were filed as further security.   It appears, however, that all these transactions were conducted through Dockendorff.   According to the agreement of the parties there is no promise by Dockendorff to deposit his own note or his own security.

It is simply agreed that he will deposit, *or cause to be deposited*, with the plaintiff an amount of money which shall at all times equal thirty per cent of the aggregate amount of outstanding loans. If it be true that he deposited his own securities or his own moneys, that would only be part of the scheme by which he undertook to borrow these moneys from the bank on behalf of the defendant, and for which he presumably was paid by the commissions which he received.

The case of *Presser* v. *Central Trust & Savings Co.* (*supra*) is a case involving transactions with another firm through this same Dockendorff and under agreements similar to those executed in 1911. The Appellate Division there was unanimously of the opinion that at no time was Dockendorff the agent of the plaintiff to receive any moneys, but treated the payment of these moneys as part of the original scheme and as an incident to Dockendorff's promise to the mercantile house to get these loans.

What is said in *International Banking Corporation* v. *McGraw Tire & Rubber Co.* (259 Fed. Rep. 386) as to Dockendorff's becoming the agent of the bank might well be applicable if, as before said, this plaintiff was the only lender under this scheme, in which case there would be no occasion as exists in the case with many lenders and the defendant ignorant of what securities were held by the different lenders.

The judgment in this case is to my mind clearly against the weight of evidence. Dockendorff has not been shown to be at any time the agent of the bank to receive these moneys, and the plaintiff is entitled to the amount demanded in its complaint.

The judgment should be reversed, with costs, on law and facts, and judgment directed for the plaintiff accordingly, with costs.

CLARKE, P. J., concurs; MERRELL and FINCH, JJ., dissent.

GREENBAUM, J. (concurring):

I concur in the result. Although the plaintiff acquiesced in the system devised by Dockendorff it nevertheless secured itself for the ultimate repayment of its loans to the Waterbury Company by procuring the note of that company as collateral security for the repayment of the loans to it, pursuant to the agreement between Dockendorff and plaintiff dated April 20, 1908, which specifically provides as follows: " 1. Central Trust and Savings Company agrees to make loans and advances to said Waterbury Company from time to time until further notice, taking as security therefor the promissory note of said company payable on demand, to be secured by approved accounts receivable of said company assigned to it by said John E. Dockendorff as contemplated in the agreement above recited."

The action is brought upon a note given as security to reimburse,

the plaintiff for the loss it sustained by reason of the non-payment of its loans to defendant. Dockendorff doubtless was the agent of the plaintiff so far as the debtors were concerned whose accounts were assigned to the bank, in that payment of their obligations to Dockendorff would be a protection to them against any claim of the plaintiff for non-payment. Beyond that, however, Dockendorff was not the agent of the bank, but really the agent of the defendant. To hold that this limited agency of Dockendorff may defeat plaintiff's recovery is to ignore the agreement that defendants' note was given to the plaintiff as collateral, so that if for any reason the loans were not repaid out of the accounts assigned or because Dockendorff failed to turn over the proceeds of the collection of the accounts, the plaintiff would be reimbursed by the defendant.

FINCH, J. (dissenting):

While Dockendorff was undoubtedly the agent of the defendant to procure loans, yet he was also the agent of the plaintiff for some purposes. I cannot agree that the defendant did not have the right to make the payments which it did to Dockendorff. Plaintiff was under an express written contract to make such payments to Dockendorff, and it did, over a long-continued course of dealings, exactly what it was under contract to do. Defendant was first obliged to make such payments by the certificates of indebtedness, accepted by the plaintiff, which thereby ratified and acquiesced in the provisions thereof, all of which contained this printed matter: " That if any checks or money due on the account hereby assigned shall at any time come to the undersigned [the defendant] such checks or money shall be accepted by the undersigned as the property of the institution or person lending the money hereon, and be immediately transferred to John E. Dockendorff."

In so far as the accounts were due, the Circuit Court of Appeals, Sixth District, says: " Whenever an assigned account was paid to the defendant, the proceeds were to be remitted to Dockendorff. The banks knew of this arrangement, and by accepting the certificates of indebtedness with this agreement endorsed, they acquiesced. Clearly, Dockendorff became their agent for this purpose." (*International Banking Corporation* v. *McGraw Tire & Rubber Co.*, 259 Fed. Rep. 381.) *Secondly*, defendant was obliged so to do by the written contract between Dockendorff and the defendant, which was made part of Dockendorff's contract with the plaintiff, and the notices specifically provided that they were given pursuant to, and interpreted by, this agreement. This contract of 1907 provided:

39

First Department, December, 1922. [Vol. 203

" 10. That if any account receivable is found unsatisfactory to any lender to whom it has been assigned as collateral security, it may be rejected by such lender, and if so rejected the party of the first part shall pay the amount thereof immediately to the party of the second part (Dockendorff) for such lender."

*Thirdly*, by the long-continued course of dealings during seven years, wherein Dockendorff collected all the moneys on the accounts receivable, in accordance with these written documents. *Fourthly*, plaintiff relied upon payments being made to Dockendorff and bound Dockendorff by a contract to make payments to it. And *fifthly*, Dockendorff was borrowing for the defendant from eleven lenders, and the defendant had no means of knowing to whom any particular account was assigned, and hence the lenders were really the undisclosed principals holding out Dockendorff as their agent, at least to receive payment. If for any reason defendant had made payments other than to Dockendorff, Dockendorff could have compelled the defendant to pay a second time to him. The note in suit was payable to Dockendorff in Dockendorff's office, which was the place appointed by all parties where all payments and adjustments were to be made.

It is thus seen that any question of notice to the defendant as to the reassignment of the account was rendered nugatory by the express acts of the plaintiff in constituting, as above noted, Dockendorff as its agent to receive payments. The Circuit Court of Appeals, in *International Banking Corporation* v. *McGraw Tire & Rubber Co. (supra)*, made a distinction between accounts due and those not due, but as subdivision 10 of the 1907 contract especially provided for payments to Dockendorff on accounts which might not have become due, I am unable to so distinguish. In *Presser* v. *Central Trust & Savings Co.* (189 App. Div. 721; affd., 232 N. Y. 573) the Court of Appeals was precluded from a consideration of the merits of the controversy by unanimous findings of fact, chief among which was that Dockendorff was not the agent of the bank but was the agent of the borrower to receive the payments, and hence the Court of Appeals had no other alternative than to affirm. In the case at bar, at least a question of fact was presented, and there is ample evidence to sustain the findings of the referee.

The judgment should, therefore, be affirmed, with costs.

Merrell, J., concurs.

Judgment reversed, with costs, and judgment directed for plaintiff, with costs. Settle order on notice.